of the United States Court of Appeals for the 4th Circuit. Be seated. Our final case of the day is Armstrong v. Hutchinson, No. 22-1082. Mr. Durrett. Yes, Your Honor. Good to have you with us, sir. Well, this is another summary judgment case with the obviously same standard that was discussed in the previous case. One thing I would like to note here, because we have students from JMU, that this case arose in the adjacent county to the city of Harrisonburg, Rockingham County, and the court that decided it sits in the city of Harrisonburg. So with that, Your Honor, our position clearly is that the facts of this case are in dispute, should not have been decided by summary judgment. They should have been construed in the light most favorable to Mr. Armstrong. He should have been given the benefit of every reasonable inference, and he wasn't. Why don't you just wait for a moment? Let's let the rest of the students continue. I'm sorry. Yeah, that's all right. This won't be charged against you. Go ahead. What happened here, Your Honor, was that Ms. Christy Armstrong, now Road Cap at the time, was Armstrong. Ms. Christy Road Cap, when denied entry to Mr. Armstrong's home, called 911 and asked for assistance to enter the house and pick up her belongings. She told 911 that she lived there and that she had been locked out of the home the previous night and again that morning. So 911 communicated that, and Officers Connolly and James responded. When they arrived, they found Ms. Road Cap outside of the home, and they questioned her and asked her if she resided there. She said yes. They asked to see her driver's license. She showed them her driver's license, and it had a different address than the address where Mr. Armstrong lived. That different address was accepted with no questions. No questions at all. Subsequent to that, Ms. Road Cap produced a key. There was no discussion about where she got the key from, but she had a key. They went around to the door that entered a Florida room, and I think I alluded to Officer James, Deputy James earlier. I meant Deputy Smith, so Smith and Connolly that were there. Smith was present when Ms. Road Cap had to take the key and cut the screen in order to get access to the Florida room. No questions were asked about that. Officer Smith testified explicitly that he did no investigation, asked no questions. He did testify that he looked at the door and concluded that it was not keyed from the outside, meaning it could not be opened with a key from the outside. But the evidence is undisputed. There were pictures put into evidence in Mr. Armstrong's testimony that that was not the case. Deputy Connolly offered no testimony on that point. Counsel, can I interrupt the description of the facts and ask a structural question? As you noted at the outset, we're in a summary judgment context. It strikes me that if we were in a different context, if the officers had found some criminal activity in the house, that's how these things often come up with a motion to suppress sort of situation. And we'd be looking at the facts to see whether the officer's conduct was reasonable in entering, which doesn't have to be perfect. We look at the totality, and there might be a couple things that would suggest maybe not, and maybe others would suggest it was. And we might very well say, hey, it was reasonable, even though there was a point or two like the ones you mentioned that might have given a concern about whether they were living there. And so now, but then when you turn it away from the way you would look at it, a motion to suppress to a 1983 action, we have Rule 56, where the standard is a genuine issue of material fact. And it strikes me that the plaintiff in a 1983 action essentially has a more generous burden or standard than would have existed at the time of a motion to suppress. And maybe that's just how it is. That just strikes me as odd. And I know we got qualified immunity. Maybe that's the equalizer in the thing. But it just strikes me as odd that the summary judgment standard would, I think, create a more generous standard or a more difficult standard than the officers would have faced in a motion to suppress hearing. You got any thoughts? Is that just the way that rules of civil procedure places? Maybe you disagree with my premise. I don't even know if it makes sense, but I've wondered about that. Your Honor, I'm not sure whether your premise is correct or not. But I do believe that where you're in the criminal context and the issue is evidence against a criminal defendant, the standard, it strikes me, is maybe logical that it would be a little bit more burdensome. I think it's the opposite. We'd look at the totality and probably might very well say it's reasonable. Maybe not. I'm not prejudging. But when you get here, you're saying not just is it reasonable, but are there any facts that could create a genuine issue of material fact about whether it was reasonable? I think that's right. The standard is the reasonably cautious police officer in the totality of the circumstances. And at the summary judgment stage, as we all know, the nonmoving party gets the benefit of facts interpreted in their favor, reasonable inferences given to them. And that's what wasn't done here. Sorry to interrupt you, Counsel, but it's not so much, I think, that the facts are disputed. It's that the district court, as you just pointed out, didn't consider them, at least you allege, in the light most reasonable to your client in determining whether or not these officers acted reasonably. The one thing that you didn't mention, which I think is also important here, is that at least one of the officers in this case had a prior incident with this couple where he was called to the home and served trespass notices on the husband in this case because I guess they were still married at the time, was trying to enter his apartment without his consent. And it would seem to me that that would be a clear red flag that you've got the same situation happening again. And as the additional facts that you pointed out suggest that a reasonable officer might inquire a little bit more before taking the word of the wife in this instance. So isn't that the problem? Is that the district court, even accepting the facts that are undisputed, just didn't take those facts in the light most reasonable to your client? I think that's precisely the problem, Judge Dias. And I didn't get through all the facts, and that is a very important one. And that's Deputy Connolly, who served that warrant under circumstances where Mr. Armstrong controlled the home and the warrant was served to keep Christie Roadcap out of the home. So he had that knowledge when he came to, and yet they asked no questions. And let me get to this because I think this is important. In addition to cutting the screen, not asking any question, and I think that illustrates one of the trial judge's proclivities, was after reciting the fact, the trial judge then wrote that cutting the screen alone, and those were the trial judge's words, doesn't create an issue of fact. But, of course, it didn't happen alone. It happened in the context of all the other facts. And Deputy Connolly doesn't… In the trial court, wasn't there also a reference to evidence that was only observed inside the house? Yes, sir. Which wouldn't have been part of the knowledge at the time they entered, correct? That's correct. The trial judge in the recitation, in a lengthy recitation of facts, included a lot of things that were not part of what the officers knew at the time that they made the entry. Deputy Connolly doesn't even remember whether they knocked on the outside door. Deputy Smith says they knocked on the outside door. Now, this is a door to a Florida room. Which room? The Florida room, not to the main house. And Mr. Armstrong was upstairs in the bedroom feeding his infant child. What do you say a Florida room is? I'm sorry, Your Honor? What do you say a Florida room is? It's exterior to the main house with typically glass or screen where you sit and enjoy the outdoors from the indoors. Okay. A sunroom is another name for it. It's another name for it. All right. But what they didn't do is when they came to the door to the main house, they didn't knock. And knowing that Mr. Armstrong had twice denied Ms. Roadcap entry, they made no effort to contact him. We contend that that was an obligation. They could have at least made a phone call, at least sent a text message. They knew he was in the house. And he had objected to the entry. She told him she lived there, didn't she? She told him she lived there. She told him she was his wife? She did, and she was at the time. She had a right to be there? She did not. She didn't say she had a right to be there? She had no right. Why did she tell him she had a right to be there? Oh, she told him that. That's what I said. Yes, sir. She told him that. But they're not entitled, again, this would be sort of a jury argument, they're not entitled to accept that in blind faith. They know, Officer Connolly testified that he knows that in domestic situations there's frequent falsehoods. You know, the parties often lie. Well, you say that they should have disbelieved her? I'm saying that they should have questioned her. But the fact was, she lied to him, and they believed her. Apparently they did. All right. And what do you say, that was unreasonable for them to do that? I'm saying, Your Honor, it was unreasonable at the summary judgment stage for the court to find that it was reasonable. At the summary judgment stage. But the fact was, the evidence was, she lied to him, and they believed her. The evidence was, she lied to him, and they believed her. And they believed her in spite of the fact that there was a different address on her driver's license, that Deputy Connolly knew, as Judge Diaz pointed out, two years earlier he had served a no trespass warrant on her to keep her from entering that house. She didn't have a key to open the outside door, she had to cut the screen, and Mr. Armstrong had twice denied her entry.  I'll say that we agree with you on that point, and we think that as a matter of law, and I'm not suggesting that this is the result, but as a matter of law, that the officers acted unreasonably in this instance. So then we get to the equalizer, as my colleague Judge Qualibam described, their qualified immunity. And I think that's a little bit more difficult, because I don't know that we have any cases on point that directly address this situation, and maybe we don't, maybe it should be just plainly obvious to an officer that in this circumstance, he or she might be liable if they allow access on the facts presented. But qualified immunity is intended to protect all but the most incompetent of officers, and I wonder whether that is what we have here, so maybe you can talk about that. I will, Your Honor. The standard, this court, in the Marciello v. Sumner case, said, and this is a direct quote, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless that very action in question has previously been upheld unlawful. So it's not to say that, but it is to say that in the light of preexisting law, the unlawfulness must be apparent. And the rule that was violated here is that in order to accept apparent authority, and this is well established in the law, a reasonably cautious officer must behave consistent with the circumstances presented to him at the time immediately before he made the entry. And our contention here is that the reasonably cautious officer under these circumstances would have raised questions and would have made an effort to contact Mr. Armstrong and would have knocked at the door entering into the main residence. Those are obvious things that police officers should do in a civil dispute where there are no emergency circumstances. With the court's permission, I will take the rest of my time for rebuttal. Thank you, sir. Ms. Shipley? Yes, sir. Good morning. May it please the court. My name is Brittany Shipley, and I represent appellees Sheriff Brian Hutchison, Deputy Daniel L. Conley, and Deputy Smith. Here, the court is here to decide whether or not it was reasonable for the law enforcement officers to enter based on Ms. Roadkapp's assertions at the door. Here, there is plenty of evidence for the officers to have reasonably concluded that she had the apparent authority to permit them to enter the residence. When the officers arrived, she told Deputy Conley that her and Mr. Armstrong had been separated but that they were still legally married and that she had since moved back in and was residing in the home as of the previous night. Counsel, let me just start off with this. I assume I agree with you that there were parts of the record here that would have made it reasonable for officers to believe them. We are here at summary judgment, and you heard me raise that issue earlier. I mean, doesn't the prior service of a trespass notice, doesn't the different address on the license, and doesn't the fact that you had to slice open a screen door with a key create a question of fact? It does not. I'll address the trespass notice first. The reason that that does not create a genuine dispute of fact is that because the trespass notice was issued a year and a half before this incident occurred, which is a significant period of time, which is easily explained away by the fact that Mrs. Armstrong represented that she moved back in and they had reconciled. And Mr. Armstrong admitted that in his deposition, that they had since reconciled since the filing of that or the serving of that trespass notice. Well, the officers hadn't heard from him at the time, right? So we're trying to figure out what the officers understood when they allowed access. So I don't know that his verification of that fact is relevant. So you're saying the officers were entitled to take her at her word, notwithstanding, as my colleague just indicated, it was evidence of a prior trespass notice. And when they looked at the license, it didn't jive up, didn't jive with her story. That's correct. She had moved the evidence. I'm sorry, what's correct? It's correct that the officers would have been reasonable, would have had a reasonable belief. It is correct that they could have relied on her statements alone to explain the fact away that a year and a half before, sure, there was this trespass issue, but she explained that she had since moved back in and that all of her belongings were in there and she was just trying to get them out because she had been locked out the night before. Georgia versus Randolph held that position. She lied to him? No, no, she did not admit she lied and we do not concede the fact that she lied. Georgia versus Randolph held that there is no exhaustive inquiry required. All that's required is that they have a reasonable basis to enter. And Georgia versus Randolph held that it would be unjustifiably impractical to require police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent. The cases cited by plaintiff do not, to address the qualified immunity issue, the cases cited by plaintiff do not show that there was a case on point that would have prohibited this conduct. United States versus Whitfield involved a mother giving consent for an adult son's closet, which is obviously different than spouses giving consent. United States versus Coral was consent given by a housekeeper, which is obviously very different than spouses. And one of the cases that they cited held that, I believe it was an out-of-district case, that it is reasonable, a D.C. Circuit case, that it is reasonable to assume that spouses have joint access to a property. In addition to all of the evidence. What about using, yeah, kind of, I guess your position is that there's reasonable explanations related to the prior trespass and the driver's license issue. And the third, or I guess the third and fourth thing, based on what she says, the husband is not allowing her access. Isn't that some evidence that she doesn't have authority to be there? And then the fourth one is, to me, using the key to slice open the screen door. I mean, and maybe there's, so I guess my question is, what about those two things? And at some point, even if you got an explanation for one of them, does the body of those issues, you know, collectively cause a problem? Well, as for the key, there is a dispute as to whether or not the officers saw that the exterior door was keyed. There's a dispute of fact whether it was keyed at all. However, there is no reasonable dispute of fact that. We've seen the pictures. I mean, you know, they're really, other than the officer saying, I don't know. I mean, if you look at the pictures, there's no question that it had key access, right? True. But there is also no evidence. The evidence put on by the deputies was that they had no warning that she was going to cut the key or cut the screen with the key. Fair enough, but then they saw her do it. And they're like, OK. I mean, once she, I get that. But once she did that, does that not, with the prior three things we've talked about, at least create a question of fact about whether she had authority? Not necessarily. She had been locked out suddenly the night before. She had left home and had returned to find herself locked out. The officers knew that? The officers know that? Dispatch knew it. And I believe there is testimony that the officer, that Ms. Roadcap, who was Ms. Armstrong at the time, had conveyed to them what she conveyed to dispatch. In addition to the other evidence that opposing counsel has cited, there's also evidence that they still have the same last names. Deputy Conley ran her license, and it came back as a Rockingham County residence, which is where this residence was located. There were no protective orders or anything that came back from dispatch indicating that either one of these parties was prohibited from being at the home or being in the presence of each other. Ms. Roadcap stated that she owned a vehicle in the driveway and in the garage, and the deputies observed her vehicle, at least in the driveway. And the key that had cut the exterior storm door accessed an exterior door, and not necessarily the storm. It accessed the exterior door, but not the screened door. But just factually, that was, you had to get through the screened door to get to the exterior door? Correct. Correct. Get through the screened door and then use the key to get into the house. Correct. Correct. Where did they, there was, where did they knock? Is the record clear where they, did they knock on the door that they actually unlocked with the key? I believe they knocked on the screened door first. There was no answer after they knocked on the screened door. There had been some time in between where they called the magistrate and then came back. Ms. Roadcap cut the screen, they entered the home. They again announced their presence upon entering, and Mr. Armstrong. Did they knock that second time? I don't believe they knocked the second time. They didn't knock on the exterior door. I don't believe they knocked on the exterior door. But to address counsel's point that perhaps that door might not have transmitted noise as well, there's no evidence of that in the record. And regardless, I don't think it is a duty of the officers to knock on the door most likely to transmit noise. There's no case law holding that that needs to be the case, particularly where they have apparent authority to enter from a wife who has said that she has reconciled with her husband and moved back in and that she was locked out only the night before. What's your position, counsel? Just assume for the sake of discussion, we think it is reasonable for them to come in. Mr. Armstrong then, when he sees them or hears them in there, is pretty specific about she doesn't live here and says specifically where she lives. The officers, I've looked at the video, they don't really give that any consideration. They just kind of say you're married, her stuff's here, call your lawyer basically. I mean, I know that the case is about the main issue is whether someone's there at the entry. I mean, I'm familiar with that. But does that mean that when the homeowner comes out and makes it clear that the person doesn't belong, does that create any duty at that point to dig into the situation further? It does not. First of all, there's no case law holding that. Second, it was not clear upon entry that Ms. Roadkapp did not belong there. She entered the residence, went straight to the sink, grabbed a trash bag, went straight upstairs and started putting her belongings and her daughter's belongings into a trash bag, what appeared to be women's clothing from the outside. In addition, there were pictures of her on the walls in the home. If she wasn't allowed to be there and if they really weren't reconciled, why would there be? Are you saying all those facts were immaterial? I'm not saying it's not immaterial. It sounds to me like you're saying the controlling fact is that the Alshers believed her. Correct. That's the bottom line of the whole thing. They believed her. Right, and they are entitled to believe one person over another. They don't have to credit any particular person as opposed to the other. Are you arguing that some kind of qualified immunity applies here? Correct. We did argue below that there is qualified immunity that applies, although the district court did not rule on it. The district court didn't rule on qualified immunity. The only thing on appeal here is the first part. Correct. And to address your point whether or not the officers were entitled to rely on her belief alone, Mr. Armstrong, he didn't present any evidence that she did not belong there except for his word. He didn't present a deed to them, anything to show that she did not own a home and was not allowed to be there. He didn't present, but didn't he say there was separation, some sort of paperwork? He said that, but he didn't present it, so the deputies didn't have it before them to consider. I hear you, but most people don't walk around with their deeds in their hip pocket. I mean, I guess I hear your point, but it's a little bit more than just she doesn't belong. He's specific about where she lives, which is the address that is on her driver's license, and he's saying there is paperwork. Admittedly, he didn't say here it is, read it, but it's more than just him kind of just saying generally she doesn't have a right to be here. Correct, but I believe that the officers, they still had a reasonable belief, and they had the ability, they had many facts from which they could glean. Give me an example of when they wouldn't have a reasonable belief. If they didn't have a reasonable belief that she was allowed to be there, counsel pointed out one case, Boyer v. Peterson, where the wife, the soon-to-be ex-wife, was trying to gain access into the shared marital property. They were soon to be separated. The officers knew that she had not occupied the residence for several months and that the husband had retained complete control over the premises. So you have to know. You have to know. They knew at the time that she didn't reside there. Right, and in this case, she wasn't representing that she resided there. She only gave consent because she was on the deed. She wasn't representing that she was, that she resided there. She represented that she was residing somewhere else. Counsel, you said that, I think as a general principle, that the officers are entitled to believe whoever they choose to believe or something like that. I don't want to misquote you, but this is occurring, though, in the specific context of someone wanting, officers wanting to grant an exception to the Fourth Amendment requirement of a warrant, right? And so in that context, the Supreme Court has said, particularly with respect to this issue of apparent authority, that those exceptions are to be jealously guarded,  when presented with a contested set of facts, to be extra cautious. So how are we supposed to consider that in this context? The fact that there were many indicia that she gave them prior to entry that she was allowed to be there. The court has drawn a line at the threshold. So anything that he presented, that Mr. Armstrong presented after she entered, can't be considered as whether or not it was reasonable for them to be there. So the only thing we can look at is what happened before they went in. Correct. And that had to be, they had to believe her, and that that belief had to be reasonable? Correct. And maybe, then to Judge Diaz's question, maybe it had to be extra reasonable. Is there a heightened standard? I don't think so. For reasonability. The case law says reasonable. It doesn't say extra reasonable. It doesn't impose any other type of extra requirement. And as Judge Quattlebaum pointed out, it doesn't need to be a perfectly reasonable. The facts don't have to be perfect. It just needs to be reasonable. Well, reasonableness in most areas of the law is almost presumed to be a jury question. And so when you say it doesn't have to be perfect, that may be true. But if there's a genuine issue of material fact as to whether it's reasonable, then in the civil context, it's up to the jury to decide. I do think being in the civil context is meaningful here, where you have a term like reasonableness that almost always is a jury question. Now, if there's no facts that would make it unreasonable, people decide things as a matter of law. So that's what summary judgment is for. But it seems to me that we look a little bit different at this in the summary judgment context than we would if you were making the ultimate determination. In other words, you may be right. The facts over here that were an issue of authority may be more persuasive. But if there's any, on the other hand, that could be relied on construing the evidence in the light most favorable to the plaintiff, don't we have to say, hey, it's got to go to the jury? I don't think that's true, Your Honor. In the case of, I believe it's Hayes v. Bolton, which is a case out of the Sixth Circuit. There's been no similar case in the Fourth Circuit. But out of the Sixth Circuit, it was a case very similar to this case where a teenage daughter had been locked out of her residence. She had represented to the officers that she lived there and that she had belongings that were in the residence. Presumably, she was there without authority of the person that owned the home because she had been locked out, like in this case here. However, in that case, the court found that she had the apparent authority to allow them to enter because she said that she lived there. Are there facts in that case that indicated she did not have apparent authority like a prior trespass notice and like using a key to slice open the screen door? Not quite like that. She didn't have a key at all. The only way that they were able to enter was through a garage door that they had discovered was unlocked. The initial attempt to get entry into the home was through the front door, and that did not, it was locked. And so the daughter allowed the deputies to enter through this side garage door, this non-primary access door. She didn't have a key at all. Does good faith come in here? It does for... I mean, the Fourth Amendment has the term reasonable in the Senate. Entry has to be reasonable, right? Correct. If they believed her in good faith, does that take care of it? And there's no jury that has to decide it? I mean, I think it goes to reasonableness. But if there's a possibility of a jury trial, then the court would have to address immunity because that bars the trial. Correct. In good faith, they're entitled to qualified immunity. Correct, and the district court didn't get to qualified immunity. It didn't get there. Because it decided that there was no constitutional violation at all. So if we were going to rule against you, we'd have to, instead of sending it back for a trial, we'd send it back to let the court do something further, which would include the immunity analysis. Correct. And here, qualified immunity would apply. There's no case law stating, there's no cases stating these similar facts, saying that an officer wouldn't be entitled to rely. And the case law that is there out of the Fourth Circuit shows that they should have been able to enter. First, we have Webb v. Braun, where the wife had apparent authority when she claimed to live there for six months and stored all her belongings there. That was out of the Fourth Circuit. But the district, we have the authority, I guess, to do that. But the district court didn't rule on it. So I guess you would say that if you lose on the constitutional violation, you'd like us to rule on qualified immunity. But lots of times, we'd prefer to let district courts do that in the first instance. And that might be the better way on an issue that hadn't even been raised. I don't disagree with you there. But if the court was considering it, I do have an argument for that. It appears that my time is up. So if there are no further questions, thank you. Thank you very much. Thank you. Mr. Durant? Yes, sir. Judge King, I think that your question sort of pinpoints, in my mind, the issue. They believed her. The question is, at the summary judgment stage, on the facts of this case, was that trusting of her reasonable? Or should they have raised some questions? That's, I think, the critical point. It can't be that they just trusted her. That trust has to be reasonable in the totality of circumstances. A reasonably cautious officer would have done the same thing. Why isn't it reasonable to say, look, we've had a rocky marriage, but we've reconciled? I mean, that's not all that unusual. I mean, why isn't that reasonable to say, look, we separated. I live somewhere else, but we're reconciled. I'm living there now. I'm not arguing that if we were in front of a jury, the defendants making that argument might convince the jury for that reason, that it was reasonable. But we're not in front of a jury. We're at the summary judgment stage. And Mr. Armstrong is entitled to have the facts considered in the light most favorable to him and inferences most favorable to him. I'd like to address what took place in the house, if I might do that. He wasn't hurt or anything. I'm sorry, Your Honor? He wasn't hurt or anything by any of the officers. Right? He wasn't injured. He wasn't injured, but he was injured. The damages would, if he had a trial, if you got past qualified immunity and had a trial, the damages would be what, nominal? Well, the damages would be the emotional distress, the suffering, the aggravation, the fear. I mean, this is, think about this. And then attorney's fees and costs for the lawyer. Yes. But think about this, Your Honor. This is early in the morning. But there's no personal injuries or anything like that. There's no personal injury, but there is a claim for conversion of two items that we contend that deputies are partially responsible for, because they enabled the entry into the house, blindly let her take whatever she wanted. You couldn't get punitive damages, could you? It was modest. You think you could? I'm sorry? Punitive damages? No. You couldn't get any punitive damages. No, sir. You'd have to prove actual damages if there are any. Yes, sir. You tried to do that. That's correct. You asked for your attorney's fees. That's correct. But if you got past qualified immunity. At this point, the judges ruled there's no constitutional violation. And so you're just trying to get past that. Yes, sir. And get to the qualified immunity question. Yes, sir. Okay. And I would urge the court to consider the fact that You went all that little bit in my mind for the benefit of some people sitting behind you there. Yes, sir. Go ahead. Consider the fact that this was early in the morning, in terms of the impact on Mr. Armstrong. He has gone to bed. He is feeding his infant daughter. And he hears noises. And he comes out of the bedroom to find sheriff's deputies in his home. And he immediately says, you have no right to be here. And I think you probably did watch that video. And you look at how Deputy Connolly reacted. I might also say that part of the record here is the magistrate commenting that he was astonished and surprised and offended by Deputy Connolly's behavior. He just kind of smugly ignored everything that Mr. Armstrong said. Now, in the criminal context, in a motion to suppress the evidence, the courts have talked about the objecting owner being at the door. But they also say in Georgia v. Randolph that an occupant of the home who objects contemporaneously has standing. Now, admittedly, that was in the context of being at the door. But I would ask this court to consider the following facts. Mr. Armstrong objected the night before. Mr. Armstrong objected 30 to 45 minutes before the entry took place. I'm going to just interrupt you on that, because I think I know where you're going with all the things that happened. But even the Supreme Court itself has talked about you could consider that threshold door issue almost arbitrary. I mean, they've allowed a search where one of the occupants says you can't come in. They arrest them and take them out, and they're sitting in the car, and they let them in. So that looks like a kind of bright line. It seems to me, while we might question the wisdom of that bright line, it's pretty bright. And it really hinges a lot on the initial entry, it seems to me. I think that is certainly the case in the criminal context. This is a civil context with no exigent circumstances. And so Mr. Armstrong was figuratively at the door. And as soon as he had the opportunity, he objected again. What's the case that says figuratively at the door is our standard? I've not seen that. There is none. There is none. So if you reject that argument, then let's turn to whether or not they should have left once he told them everything that he told them in the house. This is, again, civil. There are no exigent circumstances. This is apparent authority. There's no actual authority here. In those other cases, there was actual authority. So with only apparent authority, where the owner who has actual authority says you have no right to be here, she has no right to be here, please leave my house. Do they have a duty at that point in time to leave? And is that a jury question? And we contend that it is. Secondly, it is undisputed that Deputy Connolly did require Mr. Armstrong to remain stationary at the bottom of the stairs with Officer Smith standing there. The trial judge found that even if you don't consider whether or not he was argumentative on the tape, that because it was a domestic situation and there was a firearm in the house, that created exigent circumstances. That is how the trial judge justified that. I would submit to you that that cannot be a justification. Of course it was domestic. But there's not a single shred of evidence that there was any risk of escalation. And so his freedom was deprived unconstitutionally. And you should respectfully, for that reason and all the others, reverse the trial court and send this case back to be heard by jury. Thank you very much. Thank you, Mr. Durrett. And we appreciate the arguments and submissions of counsel. And your case will be taken under advisement.
judges: Robert B. King, Albert Diaz, A. Marvin Quattlebaum Jr.